UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SUSAN DESIENA

                              Plaintiff,                             **REPORT AND**
                                                                                              **RECOMMENDATION**
          -against-                                                          CV 17-4336 (GRB) (AYS)

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY,

                              Defendant.
------------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      This is an action for a single violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., arising out of the issuance of a Parent PLUS education loan, for which Plaintiff initiated a credit dispute, asserting that the loan was fraudulently issued in her name. Before the Court, on referral from the Honorable Gary R. Brown for report and recommendation, is Defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons, this Court respectfully recommends that Defendant's motion for summary judgment be granted in its entirety.

## BACKGROUND

      The relevant facts, as set forth below, are taken from the Local Civil Rule 56.1 statement of undisputed material facts submitted by Defendant, Pennsylvania Higher Education Assistance Agency ("PHEAA"), as well as the documents offered by PHEAA in support of its motion. Plaintiff did not submit a counter-statement, as required by Local Civil Rule 56.1. Rather, Plaintiff submitted a letter in opposition to Defendant's motion, along with exhibits annexed thereto, but without any citations to admissible evidence. As a result, Defendant argues that the Court should deem the facts contained in its Rule 56.1 statement as admitted. (Def. Reply Mem.

1

of Law 1 n.1.) "While pro se litigants are 'not excused from meeting the requirements of Local Rule 56.1,' the Court nonetheless 'retains some discretion to consider the substance of the [pro se party's] arguments, where actually supported by evidentiary submissions.'" Feelings v. Stukes, No. 15-CV-1889, 2017 WL 3601241, at *2 n.2 (S.D.N.Y. Aug. 21, 2017) (quoting Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009)) (alteration in original). Since Plaintiff is proceeding pro se, "this Court has conducted an assiduous review of the record to determine if there is any evidentiary support for [her] assertions of fact that do not cite to evidence and to determine if there are any other material issues of fact." Feelings, 2017 WL 3601241, at *2 n.2 (quoting Geldzahler v. N.Y. Med. Coll., 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010)) (additional citation and internal quotation marks omitted).

I. The Original Loan

Jacqueline DeSiena ("Jacqueline"), the daughter of the pro se Plaintiff, Susan DeSiena ("DeSiena" or "Plaintiff"), attended Adelphi University ("Adelphi") as an undergraduate student from the Fall of 2005 to the Spring of 2007, graduating with a Bachelor of Arts degree in May 2007. (Def. Local Civ. R. 56.1 Statement ("Def. 56.1") ¶¶ 4-5.) Thereafter, Jacqueline continued to attend Adelphi as a graduate student from the Summer of 2007 through the Spring of 2008, graduating with a Master of Arts degree in May 2008. (Id. ¶ 6.) During her time at Adelphi, Jacqueline received various loans to finance her education. (Id. ¶¶ 7-8.)

For the 2005/2006 academic year, Jacqueline would have owed out-of-pocket expenses for the Fall and Spring semesters. (Id. ¶ 10.) On September 15, 2005, Jacqueline spoke to an Adelphi Information Desk Representative at the Office of Student Financial Services to review her account balance. (Id. ¶ 11.) On September 22, 2005, Jacqueline returned to the Office of Student Financial Services, seeking to have a Parent PLUS loan application certified. (Id. ¶ 12.)

2

A Parent PLUS loan is a type of federal loan that is taken out by a student's parents to cover the student's undergraduate educational expenses. (Id. ¶ 9.) Parent PLUS loans are borrowed for various reasons and are usually requested for additional educational expenses not covered by a student's federal aid. (Id.)

On October 18, 2005, Plaintiff sent a communication via facsimile to Student Loan Xpress, the originator of the Parent PLUS loan at issue herein, regarding "Undergraduate Students Plus Loan" to dispute items in her credit report in connection with the Parent PLUS loan application. (Id. ¶ 13.) On October 19, 2005, Student Loan Xpress sent a "PLUS Loan Pre-Screen Decision Fax" to Adelphi for a $15,000.00 loan for Jacqueline for the 2005/2006 academic year, with Plaintiff as the borrower. (Id. ¶ 14.)

Student Loan Xpress received a Federal PLUS Loan Application and Promissory Note (the "Loan Application") for Plaintiff on November 17, 2005. (Id. ¶ 15.) Missouri Higher Education Loan Authority ("MOHELA"), the lender and servicer of the Parent PLUS loan at issue herein, subsequently received the Loan Application on November 18, 2005. (Id. ¶¶ 3, 15.) The Loan Application bears Plaintiff's handwriting and contains Plaintiff's typewritten name and phone number, as well as her handwritten social security number, email address, driver's license number, then-employer's name, address and phone number, brother's name and contact information, and sister-in-law's name and contact information. (Id. ¶ 16.)

A Parent PLUS loan for Jacqueline in the amount of $15,000.00, covering the period August 27, 2005 to May 18, 2006, with Plaintiff as the borrower, was approved on November 28, 2005 (the "Loan"). (Id. ¶ 17.) The interest rate on the Loan was 6.1 percent. (Id. ¶ 18.) The Loan was disbursed via two checks – the first on December 1, 2005 and, the second, on January 23, 2006 – each in the amount of $7,500.00. (Id. ¶¶ 20-22.) Both disbursement checks were

3

made out to Susan DeSiena and Adelphi University and bore Jacqueline's name and social security number. (Id. ¶¶ 20-21.) The first disbursement contained the notation "FEDERAL PLUS LOAN DISB 01 OF 02, 8/27/2005 to 05/18/2006." (Id. ¶ 20.) The second disbursement contained the notation "FEDERAL PLUS LOAN DISB 02 OF 02, 8/27/2005 to 05/18/2006." (Id. ¶ 21.) Both disbursement checks were mailed to Plaintiff, who endorsed them and sent them to Adelphi. (Id. ¶ 19.) The Loan proceeds were fully disbursed to Adelphi, credited to Jacqueline's school account, and used to cover her out-of-pocket expenses for the 2005/2006 academic year. (Id. ¶ 22.)

II.    The Consolidated Loan

On March 17, 2006, a Federal Consolidation Loan Application and Promissory Note (the "Consolidation Application") was submitted to MOHELA for the Loan. (Id. ¶ 24.) The Consolidation Application bears Plaintiff's handwriting and contains Plaintiff's typewritten name, social security number, email address and phone number, as well as her handwritten date of birth, driver's license number, then-employer's name, address and phone number, and a notation that "spouse is deceased." (Id. ¶ 25.) On October 20, 2006, MOHELA received a consolidation payment of $15,778.26 for the original Loan. (Id. ¶ 26.) The interest rate for the consolidated Parent PLUS Loan (the "Consolidated Loan") was 6.125 percent and was serviced by Defendant PHEAA. (Id. ¶¶ 27-28.) Beginning on November 4, 2006, monthly payments of $134.21 were due on the Consolidated Loan. (Id. ¶ 29.)

III.   Plaintiff's Requests for Assistance with Repayment

On October 11, 2006, Plaintiff telephoned PHEAA to request a forbearance on the Consolidated Loan, based on economic hardship. (Id. ¶ 31.) PHEAA granted a one-year forbearance from November 4, 2006 to November 3, 2007. (Id.) On September 27, 2007,

4

Plaintiff again telephoned PHEAA to request an additional forbearance, again based on economic hardship. (Id. ¶ 32.) PHEAA granted Plaintiff an additional one-year forbearance from November 4, 2007 to November 3, 2008. (Id.)

On October 15, 2008, Plaintiff telephoned PHEAA and asked about consolidating the Consolidated Loan. (Id. ¶ 33.) PHEAA advised Plaintiff that the Consolidated Loan could not be consolidated with Jacqueline's other educational loans. (Id.) Plaintiff again telephoned PHEAA on December 29, 2008, this time inquiring as to why Jacqueline could not put her name on the Consolidated Loan. (Id. ¶ 34.) During this telephone conversation, Plaintiff advised PHEAA that the loan was delinquent because Jacqueline did not know the loan was in repayment since the notices were sent to Plaintiff. (Id.)

Between January and August 2009, monthly payments ranging from $151.02 to $402.63 were made on the Consolidated Loan, from a bank account bearing Jacqueline's name and which she identified as her bank account during her deposition. (Id. ¶ 35.) The email address associated with the payments is Jacqueline's email address. (Id. ¶ 36.) No one else, including anyone in her family, had access to Jacqueline's bank account during this time. (Id. ¶ 37.)

On January 19, 2010, Plaintiff telephoned PHEAA and requested another forbearance for economic hardship. (Id. ¶ 41.) PHEAA granted Plaintiff a temporary forbearance from October 4, 2009 to February 28, 2010. (Id.) On March 18, 2010, PHEAA sent Plaintiff a letter informing her that the Consolidated Loan was delinquent. (Id. ¶ 42.) Plaintiff telephoned PHEAA on April 12, 2010 regarding past due payments, advising that she would make a payment on April 21, 2010. (Id. ¶ 43.) On July 26, 2010, Plaintiff telephoned PHEAA and requested another temporary hardship forbearance, which was granted through August 31, 2010. (Id. ¶ 44.)

IV.   The Delinquency

By letters dated October 22, 2010, November 19, 2010, December 22, 2010, and February 22, 2011, PHEAA advised Plaintiff that the Consolidated Loan was delinquent, with $969.04 ultimately past due. (Id. ¶¶ 45-48.) On December 21, 2011, PHEAA advised Plaintiff that the Consolidated Loan was her loan and was not being paid back by Jacqueline. (Id. ¶ 49.) Plaintiff advised PHEAA that she would contact Jacqueline and respond to PHEAA. (Id.)

V.   Plaintiff Alleges the Loans are Fraudulent

By letter dated October 19, 2016 – for the first time in over ten years of communication with PHEAA – Plaintiff asserted that she did not sign the Note for the original Loan. (Id. ¶ 50.) In response to Plaintiff's letter, PHEAA sent a letter dated November 2, 2016, outlining steps Plaintiff needed to take to support her claim of identity theft. (Id. ¶ 51.) On November 28, 2016, PHEAA received a letter from Plaintiff, enclosing an affidavit stating that she did not sign the Consolidated Loan Application, that she did not receive or benefit from the proceeds of the original Loan, and that she could not provide a copy of any court verdict or judgment that determined she was the victim of identity theft. (Id. ¶ 52.)

PHEAA responded to Plaintiff's credit dispute via letter dated December 13, 2016. (Id. ¶ 53.) The letter advised Plaintiff that PHEAA "received and investigated" her credit dispute. (Id.) The letter further advised Plaintiff that PHEAA's investigation "included the review of all relevant account history and documentation, including any information [she] provided." (Id.) PHEAA's letter to Plaintiff concluded that, based on their review, they "determined the information reported is accurate; therefore, no corrections were requested for the loans listed" in the letter (Id.)

6

VI.  The Instant Litigation

Plaintiff thereafter commenced the within litigation, pro se, by the filing of a Complaint on July 21, 2017. (Docket Entry ("DE") [1].) An Amended Complaint was filed on November 2, 2017. (DE [14].) The Amended Complaint contains one cause of action, pursuant to Section 1681s-2(b) of the FCRA, alleging that, despite notification that Plaintiff was disputing the Loan and Consolidated Loan debt as fraudulent, PHEAA failed to conduct a reasonable investigation and continued to attempt to collect the debt from Plaintiff, in violation of the FCRA. (Am. Compl. ¶¶ 27-30.)

PHEAA answered the Amended Complaint on December 7, 2017. (DE [17].) Discovery proceeded before then-assigned Magistrate Judge Tomlinson. Discovery appears to have been protracted, requiring Court intervention in a number of disputes. Upon the close of discovery, PHEAA sought and received permission to file the within motion for summary judgment. (DE [129].) That motion was referred to the undersigned – who was assigned to this case upon Judge Tomlinson's passing – for a report and recommendation and is now before the Court.

## DISCUSSION

I.  Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S.

7

242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

Where the party opposing summary judgment is pro se, the Court "must read that party's papers liberally and interpret them 'to raise the strongest arguments that they suggest.'" Burns v. Bank of Am., 655 F. Supp. 2d 240, 249 (S.D.N.Y. 2008) (quoting McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)). "By the same token, however, a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Burns, 655 F. Supp. 2d at 249 (citation and internal quotation marks omitted).

II.   The Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., was enacted by Congress in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Lieberman v. American Express Co., No. 19-cv-6989, 2020 WL 5517271, at *2 (E.D.N.Y. Sept. 13, 2020) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007)). "As part of this regulatory scheme, the [FCRA] imposes several duties on those who furnish information to consumer reporting agencies," Nguyen v. Ridgewood Sav. Bank, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014) (quoting Longman v. Wachovia Bank, N.A., 702

F.3d 148, 150-51 (2d Cir. 2012)) (alteration in original), such as "the duty to provide accurate information and to correct inaccurate information, 15 U.S.C. § 1681s-2(a), and to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency, 15 U.S.C. § 1681s-2(b)." Nguyen, 66 F. Supp. 3d at 303 (citing cases). "The FCRA creates a private right of action . . . for the negligent or willful violation of any duty imposed under the statute." Lieberman, 2020 WL 5517271, at *2 (quoting Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995)).

Where a consumer disputes information contained in her credit report to a consumer reporting agency, the consumer reporting agency "is required to notify the entity that furnished the disputed information of the consumer's dispute." Lieberman, 2020 WL 5517271, at *2 (citing Jenkins v. AmeriCredit Fin. Servs., Inc.., No. 14-cv-5687, 2017 WL 1325369, at *4 (E.D.N.Y. Feb. 14, 2017)). Pursuant to Section 1681s-2(b) of the FCRA, once the furnisher of the challenged information is notified of a dispute by a credit reporting agency – or by the consumer herself – it is required to investigate the disputed information. See Lieberman, 2020 WL 5517271, at *2; Nguyen, 66 F. Supp. 3d at 303; Burns, 655 F. Supp. 2d at 250; 15 U.S.C. § 1681s-2(b).

"Courts in the Second Circuit apply a 'reasonable investigation' standard to determine whether a furnisher of information has satisfied its obligations under 15 U.S.C. § 1681s-2(b)." Lieberman, 2020 WL 5517271, at *2 (quoting Mund v. Transunion, No. 18-cv-6761, 2019 WL 955033, at *2 (E.D.N.Y. Feb. 27, 2019)). "Under this standard, furnishers of information 'satisfy their investigation obligations under the FCRA by reviewing information provided by the [consumer reporting agency], investigating, and reporting any inaccuracies to all consumer

9

reporting agencies to which the furnishers provide information.'" Lieberman, 2020 WL 5517271, at *2 (quoting Jenkins, 2017 WL 1325369, at *6).

III.    Disposition of the Motion

Plaintiff's Amended Complaint contains a single cause of action for violation of Section 1681s-2(b) of the FCRA. To prevail on this claim, Plaintiff must prove that: (1) PHEAA "received notice of a credit dispute from a credit reporting agency;" and, (2) that PHEAA "thereafter acted in 'willful or negligent noncompliance with the statute." Nguyen, 66 F. Supp. 3d at 305 (quoting Markovskaya v. Am. Home Mortg. Servicing, Inc., 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012)). "Accuracy is also an essential element of a claim for negligent or willful violation of § 1681s-2(b) of the FCRA." Lieberman, 2020 WL 5517271, at *3 (citing cases). "Thus, a threshold showing of inaccuracy or incompleteness is necessary to succeed on a claim under § 1681s-2(b)." Id. (citation and internal quotation marks omitted); see also Holland v. Chase Bank USA, N.A., 475 F. Supp. 3d 272, 276 (S.D.N.Y. 2020) ("A 'prima facie showing of inaccurate reporting' is thus essential to maintaining a § 1681s-2(b) claim.").

The parties do not dispute that Plaintiff notified a consumer reporting agency that she disputed the Parent PLUS Loan debt owed to PHEAA. Rather, the dispute herein centers on PHEAA's investigation of Plaintiff's credit dispute, which Plaintiff alleges to be unreasonable. As stated above, PHEAA was required to conduct a "reasonable investigation." Accordingly, to succeed on her claim, Plaintiff is required to come forth with evidence that PHEAA failed to conduct a reasonable investigation. Plaintiff fails to meet this burden.

A review of Plaintiff's deposition testimony herein demonstrates that Plaintiff has no evidence whatsoever that the investigation conducted by PHEAA was unreasonable. In fact, Plaintiff testified that she "ha[s] no idea" whether PHEAA conducted a reasonable investigation.

(DeSiena Dep., DE [129-3], 250-51.) When questioned further, Plaintiff stated that "the only evidence" she has that PHEAA did not conduct a reasonable investigation are "all of the bad reviews" Defendant has on the internet. (Id. at 251.) Plaintiff reiterated that other than the reviews, she has "no other evidence" that PHEAA did not conduct a reasonable investigation of her credit dispute. (Id. at 251-52.) Similarly, Plaintiff has not provided the Court with any documentary evidence demonstrating that PHEAA failed to conduct a reasonable investigation.

Where a plaintiff fails to produce evidence that a furnisher of information did not conduct a reasonable investigation of a credit dispute, summary judgment should be granted against the plaintiff. See Burns, 655 F. Supp. 2d at 250 (granting summary judgment to defendant where there was "no showing that [defendant] either failed to investigate Plaintiffs' disputed information or that [defendant's] investigations were unreasonable as a matter of law"). Simply put, Plaintiff has failed to produce any evidence to create a material issue of fact with respect to her claim that PHEAA violated the FCRA. Rather, Plaintiff merely relies on conclusory allegations, without any evidence in support. Such allegations are insufficient to defeat summary judgment. See Burns, 655 F. Supp. 2d at 249.[1]

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment be granted in its entirety.

---

[1] Because the Court finds that Plaintiff fails to offer any evidence that PHEAA did not conduct a reasonable investigation of her credit dispute, thereby failing to sustain a claim under Section 1681s-2(b) of the FCRA, it need not reach PHEAA's second argument that the Loan underlying this action is indeed Plaintiff's – and not fraudulent, as Plaintiff alleges.

OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing Defendant's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Plaintiff at her last known address(es), and to file proof of service on ECF by July 8, 2022. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED:**

Dated: Central Islip, New York
July 6, 2022

/s/   Anne. Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge